IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAMES RYALS, JR., on
behalf of himself and
all others similarly
situated,

    Plaintiff,

v.                                    Civil Action No. 3:14cv643

STRATEGIC SCREENING
SOLUTIONS, INC.,
et al.,

    Defendants.


FILED JUL 3 0 2015 CLERK, U.S. DISTRICT COURT RICHMOND, VA

**MEMORANDUM OPINION**

This case is before the Court on the Defendants' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(1) (Docket No. 23). For the reasons set forth below, this motion will be denied.

**BACKGROUND**

Plaintiff, James Ryals, Jr. ("Ryals") applied for employment with GCA Services Group, Inc. ("GCA") in March of 2014. First Amended Class Action Complaint ("FAC") (Docket No. 5, at ¶ 35). As a part of the employment process, GCA obtained a background report that was prepared by the Defendants, which, according to the FAC, are consumer reporting agencies. Id. at ¶¶ 37, 19-21. Ryals received several letters during the hiring

process that informed him that GCA was reviewing his application for employment based on information collected from the Defendants. Id. at ¶¶ 46-51. One of those letters contained a copy of a consumer report that is alleged to reflect dismissed charges that were too old to be lawfully included in a consumer report. Id. at ¶¶ 38-43, 49-50. In early April of 2014, Ryals was notified that GCA had decided not to offer him a position based, at least in part, on adverse information provided in the background reports. Id. at 52-54.

Defendants contend, however, that GCA "reconsidered its denial and offered employment to Plaintiff" in May of 2014. Memorandum in Support of Motion to Dismiss First Amended Class Action Complaint Pursuant to Rule 12(b)(1), Docket No. 24, at 3 (hereafter "Defendants' Opening Br." at 3.). They assert that Ryals "never responded to GCA's offer, which was communicated by a GCA employee to Plaintiff in multiple voicemail messages that same month." Id.; see also Declaration of Staci Hoover[1], Docket No. 24-6 ("I personally communicated GCA's offer of employment to Mr. Ryals by telephone at the number he provided in his employment application. I left four or five messages on Mr. Ryals' voicemail, each indicating that he had been selected for

---

[1] The Court may rely on the pleadings, documents referenced in the complaint, and "other evidence in the record without converting the [subject matter jurisdiction challenge]...to one for summary judgment." Al Ahimari v. CACI Premier Tech., Inc., 758 F.3d 516, 531 (4th Cir. 2014) (quotations omitted).

2

employment and requesting that he contact me to schedule orientation.") Ryals "denies that he ever received any telephone calls or voicemail messages from GCA or anyone on behalf of GCA." Plaintiff's Response in Opposition to Defendants' Motion to Dismiss First Amended Class Complaint Pursuant to Rule 12(b)(1), Docket No. 27, at 5 (hereafter "Plaintiff's Response Br." at 5.).

In the FAC, Ryals alleges that the Defendants violated three provisions of the Fair Credit Reporting Act ("FCRA"). Docket No. 5. In Count I, Ryals alleges that the Defendants violated 15 U.S.C. §1681c(a)(5) by including "adverse items of information...which antedated the report on Plaintiff by more than seven years." Id. at 12. In Count II, Ryals alleges that Defendants violated 15 U.S.C. §1681g(a) by "systematically failing to provide a complete copy of all information in class member files within its mandated disclosure", failing "to disclose the actual sources of information within [the] reports", and failing "to include the explanation of rights disclosures mandated" by the FCRA. Id. at 17. In Count III, Ryals alleges that the Defendants violated 15 U.S.C. §1681k by "failing to notify consumers at the time...of the fact that adverse public and criminal record information [was] being provided to employers or prospective employers" and failing to maintain strict procedures. Id. at 19. Ryals has acknowledged

3

that his actual damages stemming from the above facts are "nominal." Id. at ¶121.

## DISCUSSION

Defendants argue that Ryals lacks Article III standing to pursue his FCRA claims because he has not alleged a legally-cognizable injury-in-fact.[2] If the plaintiff does not have standing, this Court lacks subject matter jurisdiction and can go no further in evaluating this case, and it must be dismissed. Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006).

### I. Legal Standard

The United States Constitution's "case-or-controversy" requirement limits the jurisdiction of the federal court system. U.S. Const. Art III §2. In order to fall within the Constitution's limits and thus the federal court system's jurisdiction, a plaintiff suing in federal court must have standing to pursue his or her claim. If a named plaintiff in a putative class action cannot establish that he has standing to pursue a claim or claims, then the entire action must be

---

[2] The Supreme Court of the United States has granted a writ of certiorari in the case of Spokeo, Inc. v. Robins, which it will hear next term. That case asks "whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute."

4

dismissed as to the claim or claims as to which standing is lacking. Doe v. Obama, 631 F.3d 157, 161 (4th Cir. 2011).

Over the years, the law of standing has been developed in such a way that it now consists of three elements. "First, the plaintiff must have suffered an 'injury-in-fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the asserted injury and the asserted wrongful conduct in that the injury has to be fairly traceable to the challenged action of the defendants and not the result of the independent action of some third party not before the court. Third, it must be 'likely', as opposed to merely 'speculative', that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotations omitted). The party invoking federal jurisdiction bears the burden of proving that these three requirements are satisfied. Id. at 560; Warth v. Seldin, 42 U.S. 490, 518 (1975).

## II. Position of the Parties

Defendants argue that Ryals does not have standing here because he has not suffered an injury-in-fact, but has only suffered a bare violation of a statute. Defendants' Opening Br. at 5-6. In support of this argument, Defendants point to the

5

Fourth Circuit's opinion in David v. Alphin, 704 F.3d 327 (4th Cir. 2013). In David, the Fourth Circuit ruled that participants in a defined benefits plan did not have standing to sue under the Employee Retirement Income Security Act of 1975 ("ERISA"). 704 F.3d at 333-39. The Court of Appeals explained that it was "undisputed that [Plaintiffs had] statutory standing to assert claims...on behalf of the Pension Plan under ERISA", it also stated that the Plaintiffs "must also have constitutional standing under Article III." Id. at 333.

Ultimately, the Fourth Circuit held that the Plaintiffs did not have constitutional standing because they could not show that they had suffered an injury-in-fact as a direct result of the Defendants' actions. Id. at 339. In particular, the Court of Appeals explained "that a participant in a defined benefit pension plan has an interest in his fixed future payments only, not the assets of the pension fund." Id. a 338 (citing Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 439-40 (1999)). Therefore, "the risk that [Plaintiffs'] pension benefits will at some point in the future be adversely affected as a result of the present alleged ERISA violations is too speculative to give rise to Article III standing." Id. That, of course, was because, under the alleged facts, the injury, if any, was speculative and, for that reason, the Plaintiffs failed the

injury-in-fact test. That scenario is not presented here and thus that part of <u>David</u> is not applicable here.

The Court of Appeals also held that the mere fact that the Plaintiffs were afforded statutory rights in accordance with ERISA did not confer constitutional standing if the Plaintiffs could not establish that they had been actually harmed in any way. <u>Id.</u>

The Defendants argue that Ryals has suffered no cognizable injury as a result of any FCRA violation and thus cannot satisfy the constitutional injury-in-fact requirement. Specifically with reference to the Section 1681g claim in Count II, the Defendants argue that Ryals "did not suffer any harm...[because] he was provided with a full copy of his latest report upon request." <u>Id.</u> at 8. With reference to the Section 1681k claim in Count III, Defendants argue that Ryals has failed "to allege that any of the reported information was inaccurate" and thus has not alleged an injury-in-fact.[3]

---

[3] Defendants also argue that Ryals lacks standing to pursue Count I under §1681c. However, both parties agree that further discovery is necessary to fully develop this argument. Plaintiff's Response Br. at 14; Docket No. 30 at 2. It is settled in this circuit that, "when the jurisdictional facts are inextricably intertwined with those central to the merits, the court should resolve the relevant factual disputes only after appropriate discovery." <u>Kerns v. United States</u>, 585 F.3d 187 (4th Cir. 2009) Because the jurisdictional and factual issues are inextricably intertwined here, the Defendants' Motion to Dismiss Ryals' § 1681c claim in Count I will be denied.

Ryals responds that "the ERISA claims in that case [David] were different from the FCRA claims here...[because] they involved a suit by plan members who...were not permitted to recover individually." Plaintiff's Response Brief at 11. ERISA provides that an individual who violates its fiduciary requirements is "liable to the retirement plan itself" and not to those individuals who are members of the plan. Id.; 29 U.S.C. §1109. Thus, the private right of action is merely an enforcement mechanism and does not create an individualized right to whatever recovery could be secured. That, of course, is not the case in actions under the FCRA. And, says Ryals, David does not control FCRA cases.

Ryals also argues that he has suffered an injury-in-fact and because the Section 1681g and Section 1681k claims challenge the Defendants' alleged failure to provide information, disclosures, and notifications in compliance with the FCRA. And, says Ryals, "the denial of a right to certain information to which the plaintiff has a right." Id. at 8. "Informational injury" of this sort is recognized within the Fourth Circuit and elsewhere. Id. (citing Public Citizen v. U.S. Department of Justice, 491 U.S. 440, 449 (1989); Fed. Election Comm'n v. Akins, 524 U.S. 11, 24-25 (1998); Project Vote/Voting For Am., Inc. v. Long, 752 F. Supp. 2d 697, 703 (E.D. Va. 2010); Salt Institute v. Leavitt, 440 F.3d 156, 159 (4th Cir. 2006); Am.

8

Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n, 389 F.3d 536, 542 (6th Cir. 2004); Grant v. Gilbert, 324 F.3d 383, 387 (5th Cir. 2003); Heartwood v. U.S. Forest Serv., 230 F.3d 947, 952 n.5 (7th Cir. 2000); Pub. Citizen v. FTC, 869 F.2d 1541, 1543 (D.C. Cir. 1989); Alvarez v. Longboy, 697 F.2d 1333, 1338 (9th Cir. 1983)).

In making his argument, Ryals relies, in part, on the decision of Dreher v. Experian Info. Solutions, Inc., 2014 WL 6834867 (E.D. Va. 2014). In Dreher, the district court held that the plaintiffs "[had] standing to pursue their claims because Congress created a legal right under the [FCRA], the violation of which constitutes an injury sufficient for constitutional standing purposes." Id. at *3. The Court cited Supreme Court precedent which established that "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." Id. at *4 (quoting Warth v. Seldin, 422 U.S. 490, 514 (1975)). Based on that precedent, the Court determined that the Plaintiff had standing, in part, because, through the FCRA, "Congress created rights to consumers and the cause of action to ensure them under the Act." Id.

The Court in Dreher also noted that its "conclusion also makes sense when considered alongside the recognition of

9

informational injuries." Id. It stated that, under the FCRA, "consumers have the right to receive certain information from consumer reporting agencies...The alleged failure of [Defendant] to provide the...information violated that right." Id. The Court found that this fact was also "enough to satisfy the injury-in-fact requirement of constitutional standing." Id.

Defendants argue that Dreher is distinguishable from this case. Specifically, they take the view that the Dreher plaintiff "suffered an actual harm under §1681g" because "the CRA allegedly deliberately misrepresented the source of negative credit account information after a request by the named plaintiff for a copy of his consumer file," and that this "injured the named plaintiff by forcing him to expend a substantial amount of effort in correcting his consumer file and disrupting his efforts to 'save' his federal security clearance." Defendants' Opening Br. at 8, fn 4.

## III. Analysis

Ryals has sufficiently alleged an injury-in-fact and thus has standing to pursue his FCRA claims in federal court.

To begin, it is important to note that the Defendants' argument is predicated on an assertion of fact that is disputed. Specifically, the Defendants say that "[t]he only actual injury that Plaintiff claims . . . [in Counts I and II] was the loss of

10

an employment opportunity [with GCA]." Defendants' Opening Br. at 7. And, say the Defendants, because GCA actually reconsidered its initial rejection of Ryals' application and offered him a job, there can be no actual injury. Defendants' Opening Br. at 7-8. That argument fails because Ryals has adequately disputed that he was ever offered employment by GCA. And, of course, the Defendants do not dispute that, if Ryals' version is accepted, he has suffered what they call an "actual" injury. Nor could they.

Even if GCA had reconsidered its early rejection and subsequently had offered Ryals a job, he still would have standing to prosecute Counts I and II. That is because Sections 1681g and 1681k guarantee consumers a certain kind of information at certain times. Specifically, in relevant part, Section 1681g entitles a consumer "all information in the consumer's file" if and when it is requested, "the sources of the information" in the file, the "identification of each person that procured a consumer report" during certain time periods, "a summary of rights" together with other rights-related information, and a "statement that a consumer reporting agency is not required to remove accurate derogatory information from the file of a consumer, unless the information is outdated...or cannot be verified." Section 1681k entitles a consumer either a notification "of the fact that public record information is

11

being reported...together with the name and address of the person to whom such information is being reported" or the maintenance of "strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date."

In this case, Ryals alleges that he has been deprived of several pieces of information to which he is, by statute, entitled. As to Section 1681g, Ryals claims that he was denied "a complete copy of all information in [his] filed within [the] mandated disclosures", "the actual sources of information within the reports", and "the explanation of rights disclosures mandated by" Section 1681g(c). FAC at ¶ 89. As to Section 1681k, Ryals alleges that he was not provided the notice required by Section 1681k(a)(1) "at the time" the public record information was reported, nor was he given the name and address of the recipient of that information. In other words, he is alleging that he did not receive the required information at the required time, as required by the FCRA.

Those allegations are sufficient to allege an injury-in-fact and create standing to sue in federal court for two reasons. First, as explained in Dreher[4], "Congress created a

---

[4] Contrary to the Defendants' arguments, the decision in Dreher that the Plaintiff had standing to sue was not based on the

12

legal right under the [FCRA], the violation of which constituted an injury sufficient for constitutional standing purposes." Dreher at *3. It is well-established that "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of the statute." Warth, 422 U.S. at 514. Congress has clearly created rights on the individual consumer level through the FCRA and has also created a private right of action through which individual consumers can enforce their rights. See 15 U.S.C. §1681n(a) ("Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer...").

David does not control this case. Although David does caution that a court should not "conflate[] statutory standing with constitutional standing", its holding speaks only to the particularities of the ERISA statute. David, 704 F.3d at 338. In David, the plaintiffs were permitted to sue under the ERISA statute, but they were "not permitted to recover individually." Id. at 332. Instead, "all relief [had to] go to the Plan itself." Id. Thus, the plaintiffs did not have an individual private right of action to redress the injury alleged. Instead,

---

plaintiff's efforts to correct his records. Rather, it was based on the fact that he alleged violations of the FCRA and that he alleged a violation of his right to certain information.

13

they could only sue to secure redress to another entity: the plan. In addition, the Fourth Circuit clearly stated that the plaintiffs in David had not suffered any injury because it was the plan, and not its members, that would bear the burden of mismanagement. That situation is unlike the one presented here. Ryals is asserting his own rights through a private right of action conferred on consumers and, under a statute that allows consumers to recover damages if they are successful. Thus, the allegation that his FCRA rights were violated is sufficient to allege an injury-in-fact.

Also, in David, the Fourth Circuit found that, on the alleged facts, the Plaintiffs' claim was speculative. That simply is not the case here and thus David is inapplicable for that additional reason.

Additionally, Ryals has demonstrated an injury-in-fact through his allegations that he was deprived of the appropriate type of information at the appropriate time. It is well-established that the allegation of a deprivation of information is sufficient to satisfy the injury-in-fact requirement. See Fed. Election Comm'n v. Atkins, 524 U.S. 11, 22 (1998). Under the FCRA, Ryals and other consumers have the right to specific information at specific times. The allegations that Defendants failed to provide that information, or that they provided the information after it was required are sufficient to posit "an

14

invasion of a legally protected interest which is (a) accurate and particularized and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. at 560-61. Thus, Ryals satisfies the "injury-in-fact" component of the accepted standing calculus.

Moreover, Congress is presumed to be aware of the Supreme Court's jurisprudence when it enacts statutes. United States v. Langley, 62 F.3d 602, 605 (4th Cir. 1995) ("Thus, it is proper to consider that Congress acts with knowledge of existing law, and that absent a clear manifestation of contrary intent, a newly-enacted or revised statute is presumed to be harmonious with existing law and its judicial construction.") (internal quotation omitted); see also Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 267-68, (1992); Miles v. Apex Marine Corp., 498 U.S. 19, 32 (1990); Cannon v. University of Chicago, 441 U.S. 677, 696-97 (1979). The law of standing enjoys no exemption from that presumption.

It would be passing strange for Congress to have created the FCRA, a rather extensive set of private rights the violation of which gives rise to damages that are available to individual consumers and also to rely on the so-called "private attorney-general concept" for enforcement of the statutory rights, but leave the holders of those rights without standing to enforce them. Indeed, Congress did no such thing because the FCRA

15

provides for actual and punitive damages. The concept that even award of nominal actual damages can support an award of punitive damages is no stranger to the law. <u>Insurance Services of Beaufort, Inc. v. Aetna Cas. And Sur. Co.</u>, 966 F.2d 847, 853 (4th Cir. 1992)("The district court should also consider that nominal damages can, in some circumstances, support an award of punitive damages.") And, the deprivation of a right is itself an injury even if the injury is slight or nominal. That certainly is true of the rights at issue in Counts I and II of the FAC.

Congress struck a balance in FCRA cases by also allowing limited statutory damages because often injury from the deprivation of an FCRA right often can be hard to prove. <u>See Harris v. Mexican Specialty Foods, Inc.</u>, 564 F.3d 1301 (11th Cir. 2009) ("This court has recognized that even though statutory damages may be used in cases where no actual damages were incurred, they are also often employed where damages are difficult or impossible to calculate."); <u>Murray v. GMAC Mortg. Corp.</u>, 434 F.3d 948, 953 (7th Cir. 2006) ("[I]ndividual losses [under the FCRA], if any, are likely to be small — [for example,] a modest concern about privacy [or] a slight chance that information would leak out and lead to identity theft. [Because the] actual loss is small and hard to qualify...statutes such as the Fair Credit Reporting Act provide

16

for modest damages without proof of injury."); A. S. Pratt & Sons, Law of Fin Privacy ¶1.09(2) (2014) ("It often is difficult for a plaintiff to establish actual damages under the FCRA, and the failure to recover any monetary award can also preclude a plaintiff from recovering court costs and attorney's fees, even if the plaintiff can establish a negligent violation of the FCRA, As a result, plaintiffs frequently will allege willful violations of the FCRA in an effort to secure minimum statutory damages and the possibility of punitive damages, and thereby to qualify for court costs and attorney's fees.") Thereby, Congress afforded relief from violation of the right and an incentive for CRA's to obey the law as well as the risk of incurring damages (even though not always great) and attorneys' fees for depriving consumers of rights to which they are entitled under the FCRA. If individual consumers did not have standing to redress violations of the FCRA where damages are difficult to prove, the purposes of the FCRA would be frustrated.

## CONCLUSION

For the reasons set forth above, Defendants' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(1) (Docket No. 23) is DENIED with prejudice as to Count II and Count III of the First Amended Complaint. The Defendants' MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT PURSUANT TO RULE 12(b)(1) (Docket No. 23) is DENIED without prejudice as to Count I of the First Amended Complaint.

It is so ORDERED.

/s/ _R E P_
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July 30, 2015