**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

**JAMES RYALS, JR.,**
*on behalf of himself and others*
*similarly situated,*

        **Plaintiff,**

**v.**                      **Civil Action No. 3:14-cv-00643-REP**

**STRATEGIC SCREENING SOLUTIONS, INC.,**
**and LIBERTY SCREENING SOLUTIONS, LTD.,**

        **Defendants.**

**PLAINTIFF'S CORRECTED MEMORANDUM IN SUPPORT OF CONSENT**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT,**
**DISMISSING CLAIMS WITH PREJUDICE, AND AWARDING**
**ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**

Plaintiff, James Ryals, Jr., by Counsel and with the consent of Defendants, submits this memorandum in support of his Motion for Final Approval of Class Settlement, Dismissing Claims with Prejudice, and Awarding Attorneys' Fees, Costs, and Service Award. The Class has received notice, and de minimus number of Class Members have objected to the Settlement, and a minute percentage have excluded themselves. In short, nothing has changed since Court's grant of preliminary approval, confirming that the Settlement is fair, reasonable, and adequate and therefore warrants final approval.

## I.    INTRODUCTION

This case presents a putative nationwide class action filed under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").  Plaintiff's Class Complaint names James Ryals, Jr., Thomas as Plaintiff and Strategic Screening Solutions, Inc. ("SSS") and Liberty Screening Solutions, Ltd.  ("LSS"), which are related entities, as Defendants.

After multiple extensive arm's-length mediations with a nationally-prominent mediator (as well as multiple, independent discussions among the Parties themselves), formal and informal discovery, early dispositive motions practice, and a thorough exploration of each side's claims and defenses, the Parties entered into a Stipulation of Settlement and presented it to the Court on at a hearing on February 17, 2016. (Doc. 38.) The Stipulation of Settlement proposes the settlement of all claims for the putative Classes pleaded against Defendants in the First Amended Class Complaint (Doc. 5), in exchange for a cash payment. The Court held preliminarily approval hearings on February 17 and 29 (Docs. 38, 51), and preliminarily approved the Settlement on February 29 (Doc. 52). The Settlement Administrator notified the more than 27,000 consumers making up the Classes of the Settlement in a Court-approved mailing. (Ex. 1, Declaration of Steve Platt ("Platt Decl.") ¶ 4.) Pursuant to Federal Rule of Civil Procedure 23, the Parties are now seeking final approval of the proposed class action settlement. Specifically, the Parties request that the Court finally certify the proposed Classes and the proposed Class Settlement,[1] award attorneys' fees, costs, and Class Representative Service Award, and dismiss the claims with prejudice.

Having carefully overseen preliminary approval of the Settlement, the Court's role at this point is to determine whether the Settlement comports with Rule 23(e)(1)(C), which permits a court to approve a settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." The Fourth Circuit has established what has become known as the *Jiffy Lube* standard to guide courts in this fairness analysis. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991). There are two parts to the Rule 23(e) consideration: (1) reasonableness and adequacy

---

[1] All capitalized terms used herein have the meanings set forth in this memorandum or in the Agreement.

of the settlement—whether the Class recovery is adequate versus what the Class gives up[2]; and (2) fairness—the process question as to how the settlement came about.[3]

First, the Settlement remains an excellent result for the Class. The settlement sends automatic cash payments to every Settlement Class member without them having to lift a finger. No claim process is required, and none of this fund reverts to the Defendants. In exchange, Class Members provide only a narrow release. And this result was obtained with questions remaining as to Defendants' willfulness, a necessary proof for the recovery of any damages. There are scant objections to the Settlement, none of which present a genuine basis for upending it. Thus the Settlement is "reasonable and adequate." FED. R. CIV. P. 23(e)(1)(C).

Second, the Settlement occurred after significant litigation. The posture at settlement is itself evidence of the arm's-length and non-collusive nature of the negotiations. The Settlement was reached after nearly one year of contentious litigation—after significant discovery and the briefing of a motion to dismiss. The Parties participated in two mediation sessions facilitated by a nationally respected mediator, with Counsel, Defendants' representatives, and representatives of Defendants' insurance carrier present. There can be no question that negotiations were conducted in an arm's-length manner. There was absolutely no coercion and Class Counsel was more than equipped to litigate aggressively and effectively on behalf of the Class. Thus the Settlement is "fair." FED. R. CIV. P. 23(e)(1)(C).

---

[2] The "adequacy" aspect considers: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *Jiffy Lube*, 927 F.2d at 158–59.

[3] These "fairness" considerations include: "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of securities class action litigation." *Jiffy Lube*, 927 F.2d at 158–59.

Plaintiff submits this Memorandum in support of his Motion for Final Approval of the Settlement, seeking the Court's approval of the end of his and the Classes' claims against Defendants. The Class has been notified, and none have expressed significant opposition to the Settlement such that the Court should reconsider its preliminary approval decision. For the reasons set forth in detail below, the proposed settlement is reasonable, fair, and adequate, and it should be approved by the Court.

## II.     THE COURT'S GRANT OF PRELIMINARY APPROVAL.

The case background, nature of Plaintiff's claims, Settlement structure, and class certification analysis are detailed in Plaintiff's Memorandum in Support of his Motion for Preliminary Approval. (Doc. 37.)

## A.     Plaintiff's Claims And Defendants' Willfulness.

The claims subject to the Settlement were pleaded in Plaintiff's First Amended Class Action Complaint, which alleges that Defendants violated the FCRA by, among other things: (1) failing to provide consumers notice "at the time" it furnished to users employment-purposed consumer reports containing adverse information; and (2) that they improperly included information in employment-purposed consumer reports that they should not have because of the age of the information. 15 U.S.C. §§ 1681c(a)(5); 1681k(a)(1). Defendants deny all of Plaintiff's claims and further denies any wrongdoing, any liability to Class Members, and that class treatment is appropriate outside the settlement context.

Liability under the FCRA is not strict and only arises upon a finding of negligence or willful failure to comply. 15 U.S.C. §§ 1681n & 1681o. Further, unless there is a finding of a willful noncompliance, Plaintiff (and thus the Classes) must establish actual damages. Statutory and punitive damages are *only* available where there is a finding of a willful violation. *See id.* As such, either the Classes must proceed on a uniform "actual damages" claim, or they must pursue

statutory and punitive damages under the more challenging "willfulness" standard of Section 1681n. Plaintiff here seeks the latter, and has settled his and the Classes' claims on that basis.

In *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 69 (2007), the Supreme Court considered the standard for whether a defendant "willfully" violates the FCRA, including whether willfulness also includes "recklessness." *Id.* at 52. While it held that the former encompassed the latter, the Court also concluded that this willfulness standard is not met "unless the action is not only a violation [of the FCRA] under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. To overcome this hurdle, it is the plaintiff's burden to prove that a defendant's attempts to comply with the FCRA were "objectively unreasonable." *Id.*

Because of perceived difficulties for Plaintiff to show willfulness, Defendants deny liability under the FCRA.[4] However, to the extent that any violations of the FCRA were found, Defendants further denied that any such violations were the result of willful misconduct.

**B.    The Lengthy Mediation of the Dispute.**

On September 15, 2014, James Ryals, Jr., filed this action and amended his Complaint on June 10, 2015. SSS and LSS then moved to dismiss the First Amended Complaint, filed their Motion to Dismiss Plaintiffs First Amended Class Action Complaint, arguing that the Plaintiff and the Classes could not demonstrate the injury-in-fact required for a consumer-plaintiff to have Article III standing to bring the Action. (Doc. 24.) The Court denied that motion (Doc. 32), but before that event the Parties had already completed two in-person mediation sessions and had made substantial progress towards the Settlement structure and terms. The mediations were

---

[4] Likewise, Defendants deny that the case was capable of Rule 23 certification.

attended in Alexandria by all counsel of record as well as the necessary parties to complete negotiations and agree upon classwide relief. (Ex. 2, North Decl. ¶ 16.)

## C.    The Settlement of the Classes' Claims.

### 1.    The 1681k Settlement Class.

Under the Settlement Agreement, the Parties agreed to resolve the claims of the Class of persons defined as follows (the "1681k Settlement Class"):

> All natural persons residing in the United States and its territories who on or between November 26, 2012 through June 1, 2015 (1) were the subject of a consumer report prepared by either or both Defendants and sold to a third party, (2) that was furnished for an employment purpose, (3) that contained at least one adverse pubic record of an arrest, indictment, or conviction obtained directly from a source other than the courthouse or governmental entity that maintains such record (i.e. information from a non-governmental database), (4) to whom Defendants did not place in the United States mail postage pre-paid, on the day they furnished any part of the report, a written notice that they were furnishing the subject report and containing the name of the person that was to receive the report.

(Doc. 52 ¶ 2.) Based on the records Defendants provided to the Settlement Administrator, the 168k Settlement Class consists of approximately 27,489 individual consumers. (Ex. 1, Platt Decl. ¶¶ 3–4.)

### 2.    The 1681c Settlement Subclass:

Under the Settlement Agreement, the Parties agreed to resolve the claims of the Class of persons defined as follows (the "1681c Settlement Sub-Class"):

> All members of the 1681k Settlement Class who (1) were also the subject of a consumer report prepared by either or both Defendants, which report was furnished for an employment purpose for a position for which the annual salary is less than $75,000, and for whom (2) the Defendants reported criminal history information (other than criminal convictions) that pre-dates the report by more than seven years.

(Doc. 52 ¶ 3.) Based on the records Defendants provided to the Settlement Administrator, the 1681c Settlement Sub-Class consists of 92 separate consumers. (Ex. 1, Platt Decl. ¶¶3–4.)

The Court appointed the Plaintiff, James Ryals, Jr., as the Class Representative on behalf of the Class Members, and undersigned Plaintiff's Counsel as Class Counsel for the Classes. (Doc. 52 ¶¶ 4–5.)

**D.      The Consideration Provided To The Settlement Classes.**

Plaintiff achieved the proposed Settlement against substantial defense leverage on merits and Rule 23 issues. This coupled with the fact that the Defendants are closely held, with modest assets. Insurance was available, but limited. Nevertheless, Plaintiff was able to negotiate a settlement structure that will pay real money to Class Members without them having to engage in a complex claims process, and imposes a narrow, tailored release.

The Settlement Agreement requires Defendant to pay $1.6 million into a Settlement Fund for the benefit of the Settlement Classes, a substantial monetary recovery. The Settlement Fund will be divided to include a separate (additional) $100,000 to be paid to members of the 1681c Sub-Class (the "1681c Settlement Fund"). These are the Class Members most likely to have suffered actual damages, as the obsolete criminal records should not have been included within their employment-purposed report. To recover the additional payment, these 130 sub-class members will have to submit a claim affirming that they suffered some amount of actual damage. That showing is minimal, requiring simply a statement that the Class Member indeed suffered actual damages. If the Court awards the 30% requested attorneys' fee, costs, and $5,000 Service Award to the Named Plaintiff, the Settlement Fund would be disbursed as follows:

| | |
|---|---|
| GROSS FUND: | $ 1,600,000 |
| Administration & Notice – | $ 60,557 |
| Attorneys' Fees, Costs and Service Award – | $ 466,833 |
| § 1681c Sub-Class Cash Fund – | $ 100,000 |
| **NET § 1681k(a) CASH FUND:** | $ 972,610 |

Assuming 27,489 § 1681k class members, the net cash payment to each will be $35.38. And assuming a 10% claim rate for the 92 § 1681c sub-class, the additional payment to these Class Members would be over $11,000.

E.      **The Notice Process Is Complete As The Court Has Instructed And Under The Governing Law.**[5]

In its Preliminary Approval decision and subsequent rulings, the Court approved and ordered sent two mail notice packets for Class Members. To facilitate this process, the Parties engaged the nationally known settlement administrator American Legal Claims ("ALC"). (Doc. 52 ¶ 7.) ALC was tasked not only with printing, processing, and mailing the notices, but also with scrubbing the Class lists to ensure it had as up-to-date addresses on Class Members as possible before mailing began. (Ex. 1, Declaration of Steve Platt ("Platt Decl.") ¶¶ 3–6.) ALC is experienced in administering large class settlements, especially complex class settlements. All actions taken by the Administrator to date have been under the direct supervision of Class Counsel.

Class Notice in this context is a fairly well-established process. An experienced administrator such as ALC is critical to the success of the mailed-notice program from the beginning when the class list is provided by the Defendants. In this case, the Administrator received a data files from Defendants, which were then reviewed and approved by Class Counsel and processed through the National Change of Address Database for mailing by ALC. (*Id.* ¶¶ 4–

---

[5] As the Parties explained to the Court in their June 9 teleconference, Defendants will serve the Class Action Fairness Act ("CAFA") notices on the appropriate attorneys general by June 10, at the latest. As reflected in the accompanying proposed order and per the Court's instruction, the Parties ask that the Court convene a second Fairness Hearing on September 12, 2016, to permit sufficient time: (1) for the recipients of the CAFA notices to comment on the Settlement, and (2) for the statutory 90-day period to pass before the Court's issuance of the final approval order. The accompanying order also reflects the Parties' agreement regarding additional notice to the members of the 1681c Sub-Class and the updating of addresses after the 90-day period.

5.) ALC mailed the Court-approved Settlement Class Notices via first class U.S. Mail to 27,489 1681k Settlement Class Members and 92 1681c Sub-Class members. (*Id*.)

After the initial mailing, the Postal Service returned 6,165 notices as undeliverable and without forwarding addresses, and ALC used a third-party service to attempt to update the addresses for those Class Members. (*Id.* ¶ 6.) After this update, ALC obtained new addresses for and re-mailed 4,988 Class Members' notices. (*Id*.) Following the two mailings and attempts to obtain valid addresses from the most commonly used sources, 1,286 Class Members' notices remain undeliverable. (*Id*.) All told, ALC estimates that it successfully mailed notice to 26,295 Class Members, a reach of 95.3 percent. (*Id.* ¶ 7.)

ALC set up and maintained an Internet website dedicated to the Settlement, and posted on that site key documents, dates, an list of frequently asked questions, and contact information for Class Counsel and ALC. (*Id.* ¶ 8.)

ALC also established and maintained a toll-free number dedicated to this case, to receive calls from Class Members with questions about the Settlement. (*Id.* ¶ 9.) ALC received 1,453 calls on that line. (*Id.* ¶ 9.) Separately, Class Counsel's contact information and telephone number were included in the notice materials, and Class Counsel received and handled dozens of direct, live calls from Class Members.

The mailed notice process was certainly the best available given the circumstances of this case, including the large Class populations and the fact that the Administrator assisted in developing the address list using a commercially available database. (*Id.* ¶ 6.) While it is almost always difficult to obtain current addresses and identification information on Class Members, especially when a consumer may be facing difficulty finding employment, the Parties and Administrator were able to minimize that problem. A 95.3% successful-mail-delivery rate is

remarkable—as high a rate as any case in which Class Counsel has been involved, and much better than the typical 20% undeliverable rate ordinary obtained (and approved by the Court).[6]

## F.    Class Members Overwhelmingly Support The Settlement.

Class Member reaction to the Settlement confirms that it is adequate. There have been nine objections to the Settlement, and none of those Class Members are represented by their own counsel. (Ex. 2, North Decl., Exs. A-D.) 32 Class Members have validly opted-out of the Settlement. (Ex. 1, Platt Decl. ¶ 10.) While Counsel is of course cognizant that opinions from Class Members matter and none are to be lightly dismissed,[7] these numbers are truly de minimus opposition to the Settlement.

With such a large class, it has been Class Counsel's experience that there are almost always some number of "class action attorneys are greedy" or "Wells Fargo should be put out of business" objections—but none were made in this case. Presumably, even the large industry of professional objectors did not conclude that there was a valid basis to challenge the Settlement.

## G.    The Narrow, Tailored Release.

This case targeted a narrow set of claims and the resulting release reflects this.  For All Class Members, the litigated and settled claim was § 1681k(a). Accordingly, the definition of "Released Claims" is limited:

> "Released Claims" means all claims set forth in the Action, (including "Unknown Claims" as defined herein), demands, rights, liabilities, and causes of action under federal or state law, whether based on statutory or common law, whether class or individual in nature, known or unknown, concealed or hidden, and that were asserted on a class action basis in the Action and/or that could have been brought

---

[6] In fact, the 80% target to which Counsel ordinary aspires and the Court typically considers is already well above the "reasonable notice" thresholds used in other venues. *See Alberton v. Commn'w Land Title Ins. Co.*, No. 06– 3755, 2008 WL 1849774, at *3 (E.D. Pa. Apr. 25, 2008) (finding as sufficient direct notice projected to reach 70% of class plus publication in newspapers and Internet); *Grunewald v. Kasperbauer*, 235 F.R.D. 599, 609 (E.D. Pa. 2006) (approving of direct mail to 55% of class and publication in three newspapers and Internet).

[7] Later in this Memorandum, Class Counsel gives each objection the attention it deserves, and addresses them all directly. (*See infra*, Section V.B.)

under 15 U.S.C. § 1681k(a), 15 U.S.C. § 1681g, or state law equivalent, including any duties or obligations to make disclosures as a result of the use of such reports.

(Doc. 50-1, Settlement Agreement § 1.18.)

On the other hand, the § 1681c Sub-Class, which is eligible for a much larger actual damage payment, provides a broader release of their FCRA claims generally. (*Id.*)

Similarly, the parties against whom claims are released are only the actual Defendant consumer reporting agencies and their connected agents and employees (including the typical list of examples of such persons). (*Id.* § 1.19). Of course, the Released Parties do not include any third parties such as employers or other consumer reporting agencies, meaning Class Members retain their claims against these entities. (*Id.*)

## V. ARGUMENT AND AUTHORITIES

### A. The Settlement Remains Fair, Reasonable, And Adequate, And The Court Should Finally Approve It.

#### 1. The standards for approval of class action settlements.

Settlement by compromise is part of a strong judicial policy within this Circuit favoring resolution of litigation prior to trial. *See, e.g.*, *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) (noting "[t]he voluntary resolution of litigation through settlement is strongly favored by the courts") (citing *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)). Settlement spares the litigants the uncertainty, delay, and expense of a trial and appeal while simultaneously reducing the burden on judicial resources. As the court in *South Carolina National Bank* observed:

> In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.

749 F. Supp. at 1423 (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)).

To safeguard the interests of the absent class members, all class settlements and the corresponding later dismissal of the case require court approval. FED. R. CIV. P. 23(e)(1)(A). Rule 23(e) imposes two basic requirements before approval of a class settlement and dismissal. First, the Court must determine that notice was directed "in a reasonable manner to all class members." FED R. CIV. P. 23(e)(1)(B). Second, the Court must determine that the settlement "is fair, reasonable, and adequate." FED R. CIV. P. 23(e)(1)(C).

Federal jurisprudence strongly favors resolution of class actions through settlement. *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1029 (N.D. Cal. 1999); *see* ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Rule 23 requires Court review of the resolution of a class action such as this one. Specifically, the Rule provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e). Court approval is required to ensure that the parties gave adequate consideration to the rights of absent class members during settlement negotiations. *Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 492 (S.D. W. Va. 2002) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)).

Despite the policy favoring settlement, in a class action, a court may approve a settlement only after a hearing and upon a finding that it is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Approval of a class action settlement is committed to the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001). However, "there is a strong initial presumption that the compromise is fair and reasonable." *Id.* (quoting *S.C. Nat'l Bank*, 139 F.R.D. at 339).

In determining whether a given settlement is reasonable, the court should avoid transforming the hearing on the settlement into a trial on the merits regarding the strengths and weaknesses of each side of the case. *Flinn v. F.M.C. Corp.*, 528 F.2d 1169, 1172–73 (4th Cir. 1975). Ultimately, the approval of a proposed settlement agreement is in the sound discretion of the Court. *Strang v. JHM Mortgage Sec. Ltd. P'ship*, 890 F. Supp. 499, 501 (E.D. Va. 1995) (citing *Jiffy Lube*, 927 F.2d at 158).

### 2. The notice to Class Members met the Requirements of due process.

In a settlement class maintained under Rule 23(b)(3), the class notice must meet the requirements of both Federal Rules of Civil Procedure 23(c)(2) and 23(e). Rule 23(e) specifies that "[n]o class action may be "dismissed or compromised without [court] approval,' preceded by notice to class members." FED. R. CIV. P. 23(e). Rule 23(c)(2) requires that notice to the class be "the best practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c). The Rule also requires that the notice inform potential class members that (1) they have an opportunity to opt out; (2) the judgment will bind all class members who do not opt out; (3) and any member who does not opt out may appear through counsel. *Id.* The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient. *See* Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION § 21.312 (4th 2004).

The class list was compiled by Defendants and with the assistance of the Administrator and Class Counsel, reasonable measures were taken to locate updated addresses for the Class Members. As this Court has held, "[w]hat amounts to reasonable efforts under the circumstances is for the Court to determine after examining the available information and possible identification methods . . . 'In every case, reasonableness is a function of [the] anticipated results, costs, and amount involved.'" *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 227 (E.D. Va.

2003) (citations omitted). The Supreme Court has concluded that direct notice satisfies due process, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812–13 (1985), and as addressed above, other courts—including this Court and others within the Fourth Circuit—have approved mailed-notice programs that reached a much smaller percentage of class members than this class notice reached. *See In re Serzone*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) (approving notice program where direct mail portion was estimated to have reached 80% of class members); *Martin v. United Auto Credit Corp.*, No. 3:05cv00143 (E.D. Va. Aug. 29, 2006) (granting final approval where class notice had approximately 85% delivery). In fact, every case in which present Class Counsel has sought and obtained approval have presented an equal or lower rate of deliverables than in this case.

The Parties' efforts to provide Class Members with notice of the settlement makes it clear that such notice was the best available notice under the circumstances given: (a) the available information; (b) the possible identification methods; (c) the number of Class Members; and (d) the amount of the settlement. The Parties have complied fully with the Court's Preliminary Approval Order, and have taken reasonable steps to ensure that the Class Members were notified—in the best and most direct manner possible—of the Settlement's terms and significant benefits.

### 3. An analysis of the *Jiffy Lube* factors confirms that the Settlement is fair and reasonable.

The next phase of the Court's determination of compliance with Rule 23(e)(1)(c) typically requires a two-part analysis, referred to in this Circuit as the *Jiffy Lube* factors. The Court must determine whether the settlement is "fair and reasonable," and then whether the settlement is "adequate." The approval of a proposed settlement agreement is in the sound discretion of the Court. *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158.

The first step in the *Jiffy Lube* analysis is an analysis of the fairness of the settlement. The fairness factors are critical to the protection of the class members from unscrupulous class counsel and relate to whether there has been arm's-length bargaining. *See In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1383 (D. Md. 1983); *S.C. Nat'l Bank*, 139 F.R.D. at 339. The Court must consider four factors: (i) the posture of the case at the time of settlement; (ii) the extent of discovery that has been conducted; (iii) the circumstances surrounding the negotiations; and (iv) the experience of counsel. *Jiffy Lube*, 927 F.2d at 158–59; *see also In re Microstrategy, Inc.*, 148 F. Supp. 2d at 663–64; *Strang v. JHM Mortg. Sec. Ltd. P'ship*, 890 F. Supp. 499, 501 (E.D. Va. 1995). A proposed class action settlement is considered presumptively fair where there is no evidence of collusion and the parties, through capable counsel, have engaged in arm's-length negotiations. *See S.C. Nat'l Bank*, 139 F.R.D. at 339. As described below, the settlement reached in this case is clearly fair and each of the *Jiffy Lube* factors are satisfied.

The determination of the appropriate time at which to settle a case is one that is entrusted to experienced class counsel. It can be difficult to detour from a litigation track focused on an upcoming trial (and meeting the various burdens of proof) to a mindset that considers that every case—no matter how conceivably strong it may seem—will always have an element of risk. Settlement is the only outcome that allows both sides to be assured of a certain ending to the litigation, alleviating both the risk and cost inherent in further litigation to both sides, as well as the additional burden on the Court's already-strapped resources. This case was no exception, and in fair consideration of the strengths and weaknesses (as well as with significant involvement by Mr. Max), Plaintiff's counsel felt that settlement was appropriate at this juncture because of the excellent result for both of the Classes. *See Cardiology Assocs., P.C. v. Nat'l Intergroup, Inc.*, No. 85CV4038, 1987 WL 7030, at *2 (S.D.N.Y. Feb. 13, 1987) (concluding that because

continued prosecution of the action would have been expensive and time-consuming, and would have involved substantial risks, "it [was] not unreasonable for the plaintiff class to take a 'bird in the hand'"); *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 547 (D. Colo. 1989) (noting that "[i]t has been held prudent to take 'a bird in the hand instead of a prospective flock in the bush'" in weighing the value of an immediate recovery against "the mere possibility of future relief after protracted and expensive litigation") (quoting *W. Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 740 (S.D.N.Y. 1970)); *In re Microstrategy*, 148 F. Supp. 2d at 667.

The proposed Settlement in this case was reached only after the following events, each of which independently supports the conclusion that the posture of the action and the discovery conducted is such that the proposed settlement is fair:

- Substantive and contested briefing, including on motion to dismiss; and

- Significant discovery regarding merits and class certification issues, including Defendants' responses to the targeted questions on both areas.

(Ex. 2, North Decl. ¶ 15.) This action has been appropriately litigated by the Parties and sufficient discovery has been obtained by both Plaintiff and Defendants to assess the strength of their respective claims and defenses. (*Id.*)

Further, the Parties have conducted arms'-length, contentious, and complicated negotiations with a private mediator and/or with counsel for the Parties. (*Id.*) Courts have presumed settlements reached in that context to be fair. *See, e.g., City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Consequently, the circumstances surrounding the Parties' settlement negotiations support a finding that the settlement is fair.

Class Counsel in this case are all highly-skilled and experienced consumer protection attorneys who have successfully litigated individual and class cases on behalf of consumers, and they endorse the settlement as fair and adequate under the circumstances. (Ex. 2, North Decl. ¶¶ 6–12, 18.) Courts recognize that the opinion of experienced and informed counsel in favor of

settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See, e.g., In re MicroStrategy*, 148 F. Supp. 2d at 665.

Moreover, there are advantages not only to the Parties, but also to the Court when opposing counsel are already experts on the legal and factual issues in a case and in a field of practice. *See S.C. Nat'l Bank*, 139 F.R.D. at 339 (concluding fairness met where settlement discussions "were hard fought and always adversarial," and those negotiations "were conducted by able counsel" with substantial experience in the area of the subject law). Experienced counsel negotiated the Settlement, making it their first priority bringing the best benefit possible to their clients, and in Plaintiff's case, to the Class. (Ex. 2, North Decl. ¶ 16.) This Court and many others have found the undersigned and other Consumer Litigation Associates attorneys qualified and adequate to represent a consumer class.[8] Similarly, this Court has found Christopher Colt North and William Downing of the Consumer & Employee Rights Law Firm to be adequate in the service of consumer classes.[9]

---

[8] *See, e.g., Thomas v. FTS USA, LLC*, 312 F.R.D. 407, 420 (E.D. Va. 2016) (concluding same set of Class Counsel "is qualified, experienced, and able to conduct this litigation so as to fully and adequately represent both classes"); *Manuel v. Wells Fargo Nat'l Ass'n*, No. 3:14CV238, 2015 WL 4994549, at *15 (E.D. Va. Aug. 19, 2015) (finding same set of Class Counsel "is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases"); *Milbourne v. JRK Residential Am.*, LLC, No. 3:12CV861, 2014 WL 5529731, at *8 (E.D. Va. Oct. 31, 2014) (finding Consumer Litigation Associates adequate class counsel); *see also Soutter v. Equifax Info. Servs., LLC*, 3:10CV107, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011) ("[T]he Court finds that Soutter's counsel is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer protection issues, and has been approved by this Court and others as class counsel in numerous cases."); *Williams v. Lexis-Nexis Risk Mgt.*, No. 3:06CV241 (E.D. Va. 2008).

[9] They are decades-long experienced employment and class action attorneys who, together with Consumer Litigation Associates, have been found to be adequate class counsel in this court and others. Together they have also represented consumers in some of the largest class action settlements in Virginia. (*See* citations in footnote 9.)

Counsel's collective experience and expertise, together with discovery sufficient to aid Counsel and the Court in evaluating Plaintiffs' claims and Defendants' rebuttals, further point to the conclusion that the Settlement was the product of arm's-length negotiation by experienced counsel and thus warrants final approval. *See Jiffy Lube*, 927 F.2d at 159; *see also Strang v. JHM Mortgage Sec. Ltd. P'ship*, 890 F. Supp. 499, 501–02 (E.D. Va. 1995) (concluding requirement met where "plaintiffs' counsel, with their wealth of experience and knowledge in the securities-class action area, engaged in sufficiently extended and detailed settlement negotiations to secure a favorable settlement for the Class").

4.    **The remaining *Jiffy Lube* factors confirm the Settlement terms are adequate.**

In an analysis of the adequacy of a proposed settlement, the relevant factors to be considered may include: (1) the relative strength of the plaintiff's case on the merits; (2) any difficulties of proof or strong defenses the plaintiff would likely encounter if the case were to go to trial; (3) the expected duration and expense of additional litigation; (4) the solvency of the defendant and the probability of recovery on a litigated judgment; (5) the degree of opposition to the proposed settlement; (6) the posture of the case at the time settlement was proposed; (7) the extent of discovery that had been conducted; (8) the circumstances surrounding the settlement negotiations; and (9) the experience of counsel in the substantive area and class action litigation. *See Jiffy Lube*, 927 F.2d at 159.

While Plaintiff's counsel firmly believes in the merits of Plaintiff's claims, demonstrating liability on the FCRA claims at issue is not at all a certainty. As noted above, liability under the FCRA is not strict and only arises upon a finding of negligence or willful failure to comply. 15 U.S.C. §§ 1681n and 1681o. Defendants of course contested liability in all regards, digging in their heels for protracted litigation. Further, unless there is a finding of a willful noncompliance, Plaintiff (and thus the Classes) must establish actual damages. Consequently, absent approval of

the Settlement, Plaintiff will be put to challenging proofs, including as to Defendants' willfulness, and all Parties face the prospect of a long and expensive litigation which will likely culminate in a trial on a class-wide basis and, thereafter, a lengthy appeal (not to mention the likelihood of a requested interlocutory appeal relating to class certification under Rule 23(f)).

It is convincing that despite the successful delivery of over 27,000 total notices, a scant number of Class Members have objected and a very small number have opted out. "Such a lack of opposition to the partial settlement strongly supports a finding of adequacy, for '[t]he attitude of the members of the Class, as expressed directly or by failure to object, after notice to the settlement is a proper consideration for the trial court.' *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975)." *In re Microstrategy*, 148 F. Supp. 2d at 668. As the Court has previously explained, "[b]ecause 'the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.' The lack here of any objections to the partial settlement and the small number of class members choosing to opt-out of the case strongly compel a finding of adequacy" *Id.* (citing *Sala v. Nat'l R.R. Passenger Corp.*, 721 F. Supp. 80, 83 (E.D. Pa. 1989). "The small number of objections necessarily must be evaluated relative to the size of this Class of over 1.0 million members. In litigation involving a large class it would be 'extremely unusual' not to encounter objections." *See In re Anthracite Coal Antitrust Litig.*, 79 F.R.D. 707, 712–13 (M.D.Pa.1978), *aff'd in part,* 612 F.2d 571 and 612 F.2d 576 (3d Cir.1979)." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 478-79 (S.D.N.Y. 1998). Where "[t]he parties objecting to the settlements are both qualitatively and quantitatively insignificant," their objections may be disregarded. *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1327 (5th Cir. 1981), *cert. denied sub nom. CFS Continental, Inc. v. Adams Extract Co.*, 456 U.S. 998 (1982). Courts recognize that where the class as a whole supports a

settlement, it should be approved.[10] Indeed, even a small majority of support creates a presumption in favor of approval. *See Reed v. Gen'l Motors Corp.*, 703 F.2d 170, 174 (5th Cir. 1983) (approving class action settlement where more than 40 percent of class objected or opted out); *Cotton v. Hinton*, 559 F.2d 1326, 1333 (5th Cir. 1977) (nearly 50 percent opted out or objected; settlement nevertheless approved).

If the Court finally approves the Settlement, then the Class Members will receive genuine, cash relief without the need to show any harm for the members of the larger Class, and a minimal showing of injury for Sub-Class Members. Class Members believing their cases are even more valuable or who have actual damage claims in excess of these expected awards have had the opportunity to opt-out and tender those claims on an individual basis. Only nine have done so, further supporting the conclusion that the Settlement is adequate. The absence of any significant opposition to the Settlement, coupled with the lack of any other competing class cases supports the strength of the Settlement. For these reasons, the opinion of all Counsel involved is that the terms of the Settlement Agreement represent a fair, reasonable, and adequate resolution of the claims alleged. The Court should conclude likewise.

**B.    None Of The Class Member Objections Warrant Overturning The Settlement.**

Of the more than 20,000 Class Members, only nine objected, and none of those objections were submitted by an attorney.[11] While objections must of course be taken seriously

---

[10] *See, e.g., In re Beef Industry Antitrust Litig.*, 607 F.2d 167, 180 (5th Cir. 1979; *Laskey v. Int'l Union*, 638 F.2d 954 (6th Cir. 1981) (small number of objectors demonstrates fairness of a settlement); *Shlensky v. Dorsey*, 574 F.2d 131 (3rd Cir. 1978) (same); *Bryan v. Pittsburgh Plate Glass Co. (PPG Indus., Inc.)*, 494 F.2d 799, 803 (3d Cir.) (approving settlement where 20 percent opted out or objected); *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20 (2d Cir. 1987) (approving settlement with thirty-six objecting); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979) (granting approval where sixteen percent objected).

[11] Some objections were filed using the Clerk's CM/ECF system, and are identified herein by their docket numbers. Those not filed of record are attached as Exhibits to the accompanying

because absent Class Members do not have the same platform to be heard as do named plaintiffs, none of the objections submitted here give any genuine doubt that the Settlement is fair, reasonable, and adequate.

Preliminary approval imbues the Settlement with a presumption of reasonableness, leaving objectors to a "heavy burden of proving the settlement is unreasonable." *Mayborg v. City of St. Bernard*, 1:04-CV-00249, 2007 WL 3047235, at *3 (S.D. Ohio Oct. 18, 2007); *see Moore v. United States*, 63 Fed. Cl. 781, 784 (Fed. Cl. 2005) (same); *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 631 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) ("Preliminary approval gives rise to a presumption that the settlement is fair, reasonable and adequate. Objectors, therefore, have the burden of persuading this Court that the proposed settlement is unreasonable."). General objections without factual or legal substantiation do not carry weight. *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 293 (W.D. Tex. 2007) (citing 4 Newberg on Class Actions § 11:58 (4th ed. 2002)); *see also* Charles A. Wright & Arthur Miller, 7B Fed. Prac. & Proc. Civ. § 1797.1 (3d ed.) (providing that in class action settlement dispute "[o]nly clearly presented objections . . . will be considered"). And when objectors seek individual terms more favorable than those applicable to other class members, they should be approved only on a showing of a reasonable relationship to facts or law that distinguish the objector's position from other class members. *In re Serzone Prods. Liability Litig.*, 231 F.R.D. 221, 233 (S.D. W. Va. 2005); Manual For Complex Litigation (Fourth) § 21.643 (2004).

Millicent Wood objects to the amount offered in settlement because the Defendants' reporting of her background has caused her financial hardship. (Doc. 59.) She fails to explain precisely how she was harmed, stating only that Defendants violated her rights and that she

---

Declaration of Christopher North and are identified by their Exhibit designations. (Ex. 2, North Decl. Exs. B–E.)

suffered financially. (*Id.* at 1) She never states that Defendants' reporting was in any way inaccurate, or even that it took place within the limitations period applicable to claims under the FCRA. (*Id.*) She has an attorney, and states that they both will appear at the Fairness Hearing. (*Id.* at 2.)

Rather than objecting, Ms. Wood's better course of action is one that is available to all Class Members under Rule 23(b)(3)—exclusion from the Class. If Ms. Wood is correct in that she has great financial loss due to Defendants' conduct, she should opt out and file her own lawsuit. Indeed, she references a possible individual lawsuit, and the fact that she has counsel, in her objection. (Doc. 59 at 2.) Surely her counsel could have advised her of this option and that requesting additional money by way of objection is not the appropriate means for her to recover for her losses. Whatever the case, Ms. Wood's general request for more money does not show that the Settlement is anything other than fair, reasonable, and adequate.

Likewise, Anthony Pina (Doc. 56), Jennise Jones (Doc. 55), Gwenetta Faye McIntyre (Doc. 54), Thomas Kalah (Ex. 2, North Decl. Ex. A) generally object to the settlement amount and suggest more money is due them because their rights were violated. None offers any specifics about the harm they endure, except Mr. Pina claims embarrassment and humiliation. (Doc. 56.) None of these objections has merit.

Settlements like this one are compromises and do not represent either Party's best day in court. Plaintiffs want the full amount due them, and defendants want to pay nothing. Somewhere in between is where the deal is struck. Simply claiming that more money would be nice is no reason to throw away a hard-fought settlement like this one, particularly where there is nothing specific claimed by these objectors that sets their individual situations apart from Class Members'. *In re Serzone*, 231 F.R.D. at 233. The Court should therefore overrule these objections.

Lisa Turner (Doc. 60) objects to the Settlement amount because she was not hired due to a background check that she does not claim was inaccurate but, rather, suggests may have correctly reported a checkered past. (*Id.*) There is nothing inherently wrong with employers relying on background reports in the hiring process generally, and a rejection based on an accurate report (assuming all statutory mandates are met) reflects precisely the way in which the statutory scheme is designed to operate. If Ms. Turner has actual damages due to someone's failure to meet their statutory obligations in the employment context, she has—as the notice clearly explains—the option to exclude herself and go-it alone. Her objection is no reason to reject the Settlement.

Jeremy Brown (Ex. 2, North Decl., Ex. B), on the other hand, is exactly the Class Member who would benefit from opting out because he claims that Defendants reported inaccurate information about him, which caused him to lose out on employment. He further cites a portion of the Texas Workforce Commission's anti-discrimination policy, suggesting he may have state-law claims as well. (*Id.* at 1, 4.) Rather than objecting to the amount offered in settlement, Mr. Brown's best option is to exclude himself and pursue his actual damages individually. He has not shown enough to overcome the presumption of adequacy. *Mayborg*, 2007 WL 3047235, at *3.

Kelvin Carroll (Ex. 2, North Decl. Ex. C) offers nothing other than the statement that he objects to the Settlement. The Court should overrule it as lacking specifics. *DeHoyos*, 240 F.R.D. at 293. Likewise, Stacy Collins (Ex. 2, North Decl. Ex. D) claims generally to have had her information shared with employers and been the victim of identity theft, but does not indicate whether Defendants are supposedly to blame or how the Settlement is deficient even as to her. She requests "something for the stress of [her] information is overwhelming enough," and asks that the Court "feel free to understand that [she] will take more than $41.00 in this case." (*Id.*)

Neither Mr. Carroll nor Ms. Collins provide any grounds for the Court to depart from its preliminary approval decision. *Mayborg*, 2007 WL 3047235, at *3.

Most notably, none of these individuals will release any claims other than for lack of notice under Section 1681k and for the contents of communications after disputes under Section 1681g. (Doc. 50-1 ¶ 1.18.) Thus, any of these Objectors that may have valuable claims for inaccuracy or other FCRA violations can pursue them even after participating in the Settlement.

## C. The Court Should Award The Proposed Attorneys' Fees, Costs, And Class Representative Service Award.

### 1. The Court should award the well-earned Service Award to Plaintiff Ryals.

Plaintiff requests—and the Defendants do not oppose—a modest award of $5,000 for his participation in this case and service to the Classes. The Service Award is to be deducted from the Settlement Fund. In this case, the Plaintiff took an active role in the case, participated in answering discovery and testifying in a deposition. He understood his role as class representative and was answerable to counsel in prosecuting the case. (Ex. 2, North Decl. ¶ 21.) Such awards in this amount and range are reasonable and have been regularly approved by judges in the Eastern District of Virginia.[12] Particularly in light of historical incentive awards both within and outside this District, the incentive awards sought are appropriate. *See, e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 976–77 (9th Cir. 2003); *In re Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002);

---

[12] *See, e.g.*, *Manuel v. Wells Fargo Nat'l Ass'n*, No. 3:14cv238(DJN), 2016 WL 1070819, at *6 (E.D. Va. Mar. 15, 2016); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07cv469; *Williams v. Lexis Nexis Risk Mgmt.*, No. 3:06cv241; *Cappetta v. GC Servs. LP*, No. 3:08cv288-JRS (E.D. Va.); *Makson v. Portfolio Recovery Assoc., Inc.*, No. 3:07cv982-HEH (E.D. Va. Feb. 9, 2009); *Daily v. NCO*, No. 3:09CV31-JAG; *Conley v. First Tenn.*, No. 1:10CV1247-TSE; *Lengrand v. Wellpoint*, No. 3:11Cv333-HEH; *Henderson v. Verifications Inc.*, No. 3:11CV514-REP (E.D. Va.); *Pitt v. K-Mart Corp.*, No. 3:11CV697 (E.D. Va. May 24, 2013); *James v. Experian Info. Sols.*, No. 3:12CV902 (E.D. Va.); *Manuel v. Wittstadt*, No. 3:12CV450 (E.D. Va.); *Shami v. Middle E. Broadcast Network*, No. 1:13CV467-CMH (E.D. Va.); *Goodrow v. Freidman Freidman & MacFadyen*, No. 3:11CV20 (E.D. Va.); *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. 3:11CV274 (E.D. Va.); *Marcum v. Dolgencorp*, No. 3:12CV108 (E.D. Va.); *Kelly v. Nationstar*, No. 3:13CV311 (E.D. Va.); *Wyatt v. SunTrust Bank*, No. 3:13CV662 (E.D. Va.).

*Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). An empirical study published in 2006 suggests that the average award per class representative is about $16,000[.]" 4 Newberg on Class Actions § 11:38 (4th ed.).

There have been no objections to or comments regarding the Service Award, and Mr. Ryals properly earned it by responding to written discovery and otherwise participating in the case through conversations with his Counsel regarding the status of the case and, in particular, the details of the Settlement Agreement. (Ex. 2, North Decl. ¶ 21.) The Court should therefore approve the award. *See Manuel*, 2016 WL 1070819, at *6 (approving award of $10,000 for named plaintiff).

**2.**     **The requested attorneys' fees and costs of 30 percent of the common fund is squarely within the range of approval.**

        **a.**     **A percentage-of-the-fund award is appropriate and reasonable here.**

The Supreme Court has consistently calculated attorneys' fees in common funds cases on a percentage-of-the-fund basis. *See Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165–67 (1939); Boeing Co. v. van Gemert, 444 U.S. 472, 478–79 (1980); *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984); *see also Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. 237, 242 (Oct. 8, 1985) (noting that fee awards in common funds cases have historically been computed based on a percentage of the fund). The Supreme Court has never adopted the lodestar method over the percentage of recovery method in a common fund case, even when lower federal courts began using the lodestar approach in the 1970's. *See Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 943 (E.D. Tex. 2000); *see also* Manual for Complex Litigation § 24.121 at 210.

Since *Blum*, virtually every Circuit Court of Appeals has joined the Supreme Court in affirmatively endorsing the percentage of recovery method as an appropriate method for determining an amount of attorneys' fees in common fund cases. *See In re GMC Corp. Pick-up*

*Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 821–22 (3rd Cir. 1995); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002); *In re Thirteen Appeals Arising out of the San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir. 1995); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994); *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993); *Camden I. Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp v. Shalala*, 1 F.3d 1261, 1268-70 (D.C. Cir. 1993); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 49 (2nd Cir. 2000).

In the Fourth Circuit, attorneys' fees in common fund cases such as this one are almost universally awarded on a percentage-of-the-recovery basis. *Manuel*, 2016 WL 1070819, at *5–6; *Smith v. Krispy Kreme Doughnut Corp.*, No. 1:05cv00187, 2007 WL 119157, at *1 (M.D.N.C. Jan 10, 2007); *see DeLoach v. Philip Morris Cos.*, No. 00-1235, 2003 WL 23094907, at *3 (M.D.N.C. Dec. 19, 2003) (citing, with approval for this same proposition, *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 215 (D. Me. 2003)); *see also Strang*, 890 F. Supp. at 502 (explaining "[a]lthough the Fourth Circuit has not yet ruled on this issue, the current trend among the courts of appeal favors the use of a percentage method to calculate an award of attorneys' fees in common fund cases.").

The Fourth Circuit has not established a benchmark for fee awards in common funds cases, but district courts within the Fourth Circuit have noted that most fee awards range from 25 to 40 percent of the settlement fund.[13] Percentage-fee awards are exactly what the name

---

[13] Indeed, "empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in the class actions average around one-third of the recovery." 4 NEWBERG ON CLASS ACTIONS § 14:6 (4th ed.); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (review of 289 class action settlements demonstrates "average attorney's fees percentage [of] 31.31%" with a median value that "turns out to be one-third."). In an analysis of such historic patterns, Silber and Goodrich explained that empirical evidence does not necessarily establish what a court should do in any given case, but it does provide guidance to the court in determining whether a fee is reasonable. Reagan W. Silber & Frank E. Goodrick, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 REV.

suggests—class counsel's fees are determined as a percentage of the total settlement fund they are able to recover for the class. This Court has recognized the importance of incentivizing experienced class counsel to take on risky cases. *See In re Microstrategy*, 172 F. Supp. 2d at 788. In fact, a comprehensive study of attorneys' fees in class action cases notes "a remarkable uniformity in awards between roughly 30% to 33% of the settlement amount." Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. OF EMPIRICAL LEGAL STUDIES 27, 31, 33 (2004). This holds true even in instances where the class recovery runs into the hundreds of millions of dollars. *See In re Thirteen Appeals*, 56 F.3d at 295 (approving award of thirty percent of $220 million); *In re Combustion, Inc.*, 968 F. Supp. 1116, 1136 (W.D. La. 1997) (awarding thirty-six percent of $125 million); *In re Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving award of 36% of $3.5 million settlement fund); *Gwozdzinnsky v. Sandler Assoc.*, No. 97-7314, 1998 WL 50368, 159 F.3d 1346 (2d Cir. 1998) (table) (affirming district court's award of 25% of $1 million common fund) (unpublished); *In re Educ. Testing Serv.*, 447 F. Supp. 2d 612, 631 (E.D. La. 2006)(concluding the customary fee award for class actions "is between 22% and 27%"); *In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499, at *1 (E.D. Mich. June 27, 2006) (awarding fee of 28.5% of $28 million settlement fund); *In re Xcel Energy, Inc.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) (awarding 25% of $80 million settlement fund); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (granting attorneys' fees in amount of 33 1/3% of $1.5 million settlement fund); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (awarding 33.3% of $3.8 million settlement fund); *Kidrick v. ABC TV & Appliance Rental*, No. 3:97cv69, 1999 WL 1027050, at *1-2 (N.D. W. Va. May 12, 1999) (awarding 30.6% of approximately $400,000 settlement fund, noting that "[a]n award of fees in

LITIG. 525, 545–46 (1998).

the range of 30% of the fund has been held to be reasonable. . . . Fees as high as 50% of the fund have been awarded.") (internal citations omitted).

In this case, the Defendant agreed not to oppose Class Counsel's fee requests in the total percentage of 30% of the full common fund (not including $60,557 in administration costs), amounting to $461,833. As with any class case that they agree to take on, Plaintiffs' Counsel live by the result that they obtain for the Class Members. In this case, where they bore the risk of the litigation entirely and advanced significant funds in furtherance of the litigation, Class Counsel submits that fee of 30% of the cash recovered for the Classes is reasonable. Class Counsel has consistently taken the position in all cases that the attorneys' fees should be based on a percentage of the recovery obtained for the class. This has been true even in cases where the result is an objectively small fee such as in *Mayfield v. Memberstrust Credit Union*, 3:07cv506 (E.D. Va.), where the class size was so small that counsel's fee ended up being $8,300.00, well below the actual time counsel had invested in the case. Indeed, in *Conley v. First Tennessee*, 1:10cv1247 (E.D. Va.), counsel took the same consistent position with respect to a class of 350 consumers and resulted in recovery of an approved fee of only $20,000.00. (*Conley* Doc. 37). The same is true in another case, *Lengrand v. Wellpoint*, No. 3:11Cv333-HEH (E.D. Va., (Doc. 42)), in which counsel requested only 20% of the class recovery, $8,550.00, where the class size was very small. In each case, the standards of Rule 23 demand that Class Counsel represent the interest of the class with the same attention, zeal, and competence whether the class is in the millions such as *Ryals v. HireRight Solutions*, or is less than a hundred as in *Lengrand v. Wellpoint*.

**b.** **A cross-check against Counsel's lodestar confirms the requested fee is reasonable.**

A cross-check is not required to determine the fairness of a fee when the percentage-of-recovery method is used. However, courts have, on occasion, requested information regarding an

estimate of Class Counsel's lodestar as a cross-check in determining the percentage of the common fund that should be awarded. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.724. Class Counsel have supplied an estimate of their lodestar and expenses, which are $225,537.50 in fees, and $12,460.66 in total, unreimbursed expenses. (Ex. 2, North Decl. ¶¶ 26, 29.) In this case, each Class Member will receive meaningful cash benefits from the Settlement. Plaintiffs have already demonstrated that a fee percentage of one-third of the class recovery is appropriate. In fact, "empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in the class actions average around one-third of the recovery." 4 NEWBERG ON CLASS ACTIONS § 14:6 (4th ed.); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (review of 289 class action settlements demonstrates "average attorney's fees percentage [of] 31.31%" with a median value that "turns out to be one-third.").

The time actually expended in this case for important tasks such as answering class members' questions and significant time spent conferring between counsel has not been strictly recorded, as it has a tendency to be duplicative. Thus, even if the Court chose not to use the percentage-of-recovery method and awarded fees strictly by the hours spent (as in a contested posture), the current multiplier is an acceptable 2.05. *See Berry*, 807 F.3d at 617 (approving multiplier of 1.99); *see also In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (finding that requested fee amount with a lodestar multiplier of 7.89 was not unreasonable "[g]iven the outstanding settlement in this case and the noticeable skill of counsel"); *In re Charger Commc'n, Inc., Sec. Litig.*, No. MDL 1506, 4:02CV1186CAS, 2005 WL 4045741, at *1, *18 (E.D. Mo. June 20, 2005) (approving lodestar multiplier of 5.61); *In re Excel Energy, Inc., Sec., Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 989 (D. Minn. 2005) (approving a multiplier of 4.7 in a case that only involved document review, and was resolved without any depositions after two days of mediation); *In re Rite Aid Corp. Sec. Litig.*, 362 F.

Supp. 2d 587, 589 (E.D. Pa. 2005) (awarding lodestar multiplier of 6.96 despite the fact that the parties engaged mostly in informal discovery and took no depositions); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y 2002) (describing multiplier of 4.65 as "modest" in a case in which plaintiffs conducted no depositions, only interviews, and confirmatory discovery consisted of tens of thousands of pages of documents); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding 3.97 multiplier, reasoning that multipliers between 3 and 4.5 were common); *In re WorldCom, Inc., Sec. Litig.*, 388 F. Supp. 2d 319, 353 (S.D.N.Y. 2005) (awarding multiplier of 4).

As the Fourth Circuit held in *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245 (4th Cir. 2010), the lodestar alone is insufficient to account for the contingency nature of this case and the risk borne by Plaintiffs and their counsel. Therefore, in the event that the Court did not choose to adopt the percentage-of-recovery method here, it could similarly approve the requested fee award by using a multiplier of 2.05. Such a multiplier is justified given the contingent nature of the case, the significant risk incurred, and the result achieved. (Ex. 2, North Decl. ¶¶ 25–26.) It is also consistent with comparable multipliers approved as cross checks in other cases.[14] However, in this case, and in all cases in which Plaintiffs' Counsel participate, they submit that the proper measure of compensation should be driven by the benefit actually obtained for the Class Members. *See McDonnell v. Miller Oil Co.*, 134 F.3d 638, 641 (4th Cir. 1998) (finding that the "most critical factor in calculating a reasonable fee award is the degree of success obtained" (internal quotation marks omitted)).

Moreover, Class Counsel will not be separately reimbursed for its combined $12,460.66 in expenses reasonably incurred in pursuing this Settlement—those costs will be subsumed

---

[14] Professor Miller reviewed cases where federal courts used a multiplier to determine whether a multiplier was reasonable, citing cases approving a range of multipliers from 2.5 to 19.6. *See Henderson v. Acxiom Risk Mgmt.*, Civ. No. 3:12CV589 (E.D. Va.) (Doc. 104-1, Miller Decl. ¶¶ 32–33).

within the fee award. Thus, Counsel's effective fee should be reduced by this amount, making it actually $449,272.34, and resulting in a reduced multiplier of 1.96. This decision to forgo separate reimbursement for expenses incurred cements the reasonableness and appropriateness of the requested award.

## VI.    CONCLUSION

The Settlement is an excellent result considering the contentiousness of the litigation and the lengthy mediation process. The terms of the Settlement, as well as the circumstances surrounding negotiations and its elimination of further costs caused by litigating this case through trial and appeal, satisfy the strictures for final approval.

**Respectfully Submitted,**

**JAMES A. RYALS,**
*on behalf of himself and others*
*similarly situated*,

BY: _____/s/_____
Craig C. Marchiando, Esq., VSB #89736
Leonard A. Bennett, Esq., VSB #37523
Susan M. Rotkis, Esq.
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd, Suite 1A
Newport News, VA  23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email:  lenbennett@clalegal.com

Christopher C. North, Esq.
William Leonard Downing
**THE CONSUMER & EMPLOYEE RIGHTS LAW FIRM**
751-A Thimble Shoals Blvd.
Newport News, VA 23606
Telephone: (757) 873-1010
Facsimile: (757) 873-8375
Email: cnorthlaw@aol.com

***Counsel for the Plaintiff and the Classes***

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of June, 2016, I filed a true and correct copy of the foregoing on the Court's CM/ECF System, which will send a notice of electronic filing to all counsel of record, including:

Charles Michael Sims
LeClair Ryan, A Professional Corporation
951 East Byrd St.
Richmond, VA 23219
Email: Charles.sims@leclairryan.com

_____/s/_____
Craig C. Marchiando VSB #89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd, Suite 1A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com